1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

           FOR THE EASTERN DISTRICT OF CALIFORNIA

10  BARRY AVERS AND JANET
    AVERS,
11                                    NO. CIV. S-08-2737 LKK/DAD

12           Plaintiffs,

13      v.                                    O R D E R

14  AGRYLIN, ANAGRELIDE, ROBERTS
    PHARMACEUTICALS, SHIRE
15  PHARMACEUTICALS GROUP plc.,
    WILLIAM NEWSOM, JR., M.D.,
16  and DOES 1 to 100,

17           Defendants.

18  _____/

19      Plaintiffs, Barry and Janet Avers, brought suit against

20  defendants, Shire Pharmaceuticals Group plc ("SPG"), Roberts

21  Pharmaceuticals, and William Newsom, Jr.  Pending before the court

22  is defendant SPG's motion to dismiss for lack of personal

23  jurisdiction.  In opposing this motion, plaintiffs have also argued

24  that removal from state court was improper.

25  ////

26  ////

                                   1

# I. BACKGROUND[1]

Plaintiffs, Barry Avers and Janet Avers, are residents of California. On June 6, 2005, Mr. Avers had a stroke with a large hemorrhage. As a result of this stroke, he suffers permanent disabilities. Prior to the stroke, he allegedly had purchased and used the medication Agrylin in the manner intended by its manufacturer.

On June 5, 2007, plaintiffs filed a pro se complaint in the Superior Court of California for Nevada County. Plaintiffs used a form complaint approved by the California courts, which provides few specific allegations. The complaint names Shire Pharmaceuticals Group, plc ("SPG"), a UK corporation, and Roberts Pharmaceuticals, a UK corporation, stating claims for implied breach of warranty, express breach of warranty, products liability, and negligence. These claims allege that SPG and Roberts Pharmaceuticals developed and manufactured the drug Agrylin, also known by its generic name Anagrelide.[2] The complaint also names William Newsom, Jr., a California resident and Mr. Avers's treating physician, alleging that Newsom failed to warn plaintiffs that strokes were a known side effect of the medication. SPG states that process was never served on it, and plaintiffs do not dispute

_____

[1] For purposes of this motion, plaintiffs' allegations are taken as true, as explained below.

[2] Although the complaint names Agrylin and Anagrelide as defendants, it appears to the court that these names refer only to particular medications, and are not separate entities or elements of the name of either of the corporate defendants.

2

this statement.

On November 5, 2008, more than a year after the state court case was filed, plaintiffs voluntarily dismissed defendants Newsom and Roberts Pharmaceuticals from this action. Nine days later, SPG removed the case to federal court. SPG's notice of removal argues that Newsom was a "sham" defendant who was fraudulently joined, and that absent Newsom, diversity jurisdiction was available. SPG had not made any prior filings or appearances in the state court case.[3] On November 21, 2008, SPG moved in this court to dismiss the claims against it for lack of personal jurisdiction.

The hearing on this motion was repeatedly continued while plaintiffs sought representation by counsel. Plaintiffs acquired counsel shortly before the extended deadline for submitting an opposition memo, and counsel submitted an opposition on February 6, 2009. Plaintiffs were then granted leave to file a supplemental opposition. Plaintiffs' two opposition memoranda argue that personal jurisdiction exists on the basis of consent or contacts with California, and also argue that removal was improper, such that this case should be remanded to state court. SPG's reply brief in support of the motion to dismiss addresses plaintiffs' remand arguments. As no motion for remand has been filed, this court addresses this issue only insofar as it challenges the

---

[3] The parties agree on this point, although the state court record has not been provided to this court. Plaintiffs have provided this court with copies of the state court notices of dismissal of defendants Newsom and Roberts Pharmaceuticals, as well as the dismissals of defendants Agrylin and Anagrelide. See Notice of Dismissals, Doc. No. 27, filed Apr. 2, 2009.

existence of subject matter jurisdiction.

Thus, the parties' filings raise two substantive issues: whether this court may exercise personal jurisdiction over SPG, and whether this court has subject matter jurisdiction over the matter. Plaintiffs' pro se form complaint predictably contains no allegations germane to either issue. However, plaintiffs' opposition memoranda contain various allegations and evidence pertinent to the personal jurisdiction question. As to removal, and thereby subject matter jurisdiction, plaintiffs' memoranda argue that Newsom was not a sham defendant, but contain no factual allegations on this point.

On a Fed. R. Civ. P. 12(b)(2) motion, the court may look beyond the allegations of the complaint. Moreover, plaintiffs will presumably seek to file an amended complaint containing these allegations now that counsel has been retained. Accordingly, the court considers the facts alleged in the opposition memoranda, as well as the parties' exhibits.

The parties have strongly divergent views of SPG's contacts with California. SPG provides an employee declaration stating the following. SPG is a UK company with principal place of business in the UK. SPG has always been a holding company,[4] which has never manufactured, marketed, or sold any products. SPG is one entity in a network of related companies using the name "Shire." Prior

---

[4] A holding company is a company that holds stock in other companies. Ordinarily, a holding company does not produce goods or services of its own.

to November 25, 2005, SPG was publicly traded, after which time SPG became a wholly owned subsidiary of a distinct UK company, Shire Biopharmaceuticals Holding Limited ("SBHL") f/k/a Shire plc. SBHL is in turn an indirect subsidiary of the company currently known as Shire plc, a publicly traded company. According to SPG, SPG has never been registered to do business in California, transacted such business in California, maintained an office or business in California, had employees in California, advertised in California, or had FDA approval to market Agrylin in the United States.

Plaintiffs allege that many of SPG's statements are incorrect. In essence, plaintiffs allege that SPG did develop Agrylin, that SPG has numerous employees in the United States, that SPG, through these employees and otherwise, promoted and sold the drug in California, and that SPG remains a publicly traded company with California shareholders. Plaintiffs base most of these statements on a 1999 press release describing SPG's merger with Roberts Pharmaceuticals. However, plaintiffs' memoranda reservedly make these allegations by referring to contacts that are likely or that should be inferred. For example, the 1999 press release states that after the merger, SPG would have 269 United States sales force employees. Based on this fact, plaintiff states that "it is likely that" at least some of these employees promoted and sold Agrylin in California.[5] Similarly, plaintiffs do not plainly allege

_____

[5] Plaintiffs do not allege, even in this indirect way, that any of these employees were actually employed in California.

SPG's reply brief does not dispute that SPG issued this press release, but claims that the stated activities were those of SPG's

5

California shareholders, instead alleging that because SPG is publicly traded, such shareholders must exist. Despite plaintiffs' reservations, the court construes plaintiffs' filings as alleging that SPG actually developed Agrylin, and sold and marketed it in California.

Plaintiffs allege in the alternative that if these acts were separate but related business entity, SPG is nonetheless subject to personal jurisdiction on an agency theory, because SPG and its parent Shire plc "openly marketed that they were and are the ones running the show." Beyond this broad allegation, plaintiffs make no further allegations related to this argument.

## II. STANDARDS

### A. Standards For Motion To Dismiss Based On Lack of Personal Jurisdiction

When a defendant challenges the sufficiency of personal jurisdiction, the plaintiff bears the burden of establishing that the exercise of jurisdiction is proper. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001); Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1194 (9th Cir. 1988). In evaluating a motion to dismiss for lack of personal jurisdiction, the court may choose to require an evidentiary hearing. If no hearing is held, a plaintiff must "demonstrate facts that if true would support jurisdiction

---

subsidiaries, and that "Publicly traded holding companies routinely cite the activities of subsidiaries in press releases directed to the investment community . . . ." See also Doe v. Unocal Corp., 248 F.3d 915, 929 (9th Cir. 2001) (noting this practice).

over the defendant." Id. (quoting Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)).

Analysis of the appropriateness of the court's personal jurisdiction over a defendant in a case in which the court exercises diversity jurisdiction is resolved under California's long arm statute and the due process clause of the United States Constitution. Aanestad v. Beech Aircraft Corp., 521 F.2d 1298, 1300 (9th Cir. 1974). The California statute in turn authorizes the court to exercise personal jurisdiction on any basis consistent with the due process clause. Cal. Code Civ. Proc. § 410.10; Rocke v. Canadian Auto Sport Club, 660 F.2d 395, 398 (9th Cir. 1981).

Consistent with the due process clause, the court may exercise personal jurisdiction over a defendant when the defendant has consented to personal jursidiction, or when defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). If the defendant is domiciled in the forum state, or if the defendant's activities there are "substantial, continuous and systematic," a federal court can exercise general personal jurisdiction as to any cause of action involving the defendant, even if unrelated to the defendant's activities within the state. Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952); Data Disc, Inc. v. Systems Technology Assoc., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977).

If a non-resident defendant's contacts with California are not

7

sufficiently continuous or systematic to give rise to general personal jurisdiction, the defendant may still be subject to specific personal jurisdiction on claims arising out of defendant's contacts with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477-78 (1985); Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986). The court employs a three-part test to determine whether the exercise of specific jurisdiction comports with constitutional principles of due process. Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758 (9th Cir. 1990); Haisten, 784 F.2d at 1397; Data Disc, 557 F.2d at 1287. First, the defendant must "purposefully avail" itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Second, the claim must arise out of the defendant's forum-related activities, and third, the exercise of jurisdiction must be reasonable. Haisten, 784 F.2d at 1397.

In determining whether the claim arises out of the defendant's forum-related activities, the Ninth Circuit applies a "but for" test: if plaintiff's injury would not have occurred but for defendant's forum-related activities, the claim arises out of those activities. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). However, where defendant only has isolated contact with the forum state, a high degree of relationship must be shown, i.e. the cause of action must arise out of that particular purposeful contact. Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).

If a nonresident has purposefully availed herself of the

8

privilege of doing business in California, thus invoking the
benefits and protections of its laws, the burden is on the
defendant to show that exercise of jurisdiction does not comport
with "fair play and substantial justice," and is therefore
unreasonable. Burger King, 471 U.S. at 476. To determine whether
the exercise of specific personal jurisdiction over a defendant
would be "reasonable", the court examines seven factors: 1) the
extent of defendant's purposeful interjection into the forum;[6] 2)
the burden of defending the suit in the forum; 3) the extent of
conflict with the sovereignty of the defendant's state; 4) the
forum state's interest in the dispute; 5) the most efficient forum
for judicial resolution of the dispute; 6) the importance of the
chosen forum to the plaintiff's interest in convenient and
effective relief; and 7) the existence of an alternative forum.
Gray & Co., 913 F.2d at 761 (discussing Burger King, 471 U.S. at
477.

The unique burdens on a foreign national defendant of
defending itself in the local forum "should have significant
weight" in assessing the reasonableness of personal jurisdiction.
Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102
(1987). In addition, litigation against an alien defendant creates
a higher jurisdictional bar due to concerns of conflict with the

---

[6]   The Ninth Circuit gives this factor no weight once it is
established that the defendant purposefully availed itself of the
privilege of conducting business of the state, thereby invoking the
benefits and protections of its laws. Sinatra v. National
Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988).

sovereignty of the foreign state.  <u>Id.</u> at 115.  However, "the factor of conflict with the sovereignty of the defendant's state 'is not dispositive, because if given controlling weight, it would always prevent suit against a foreign national in a United States court.'"  <u>Sinatra</u>, 854 F.2d at 1199 (quoting <u>Gates Learjet Co. v. Jensen</u>, 743 F.2d 1325, 1333 (9th Cir. 1984), <u>cert. denied</u>, 471 U.S. 1066 (1985)).  When the foreign defendant maintains a continuing business relationship with a domestic agent, sovereignty considerations weigh less heavily. <u>Sinatra</u>, 854 F.2d at 1200.

**B.  Standard for Evaluating Challenges to Subject Matter Jurisdiction**

In arguing that removal was improper without filing a motion to remand, plaintiffs have challenged whether this court has subject matter jurisdiction over their suit.  "The burden of establishing federal jurisdiction is on the party seeking removal." <u>Prize Frize, Inc. v. Matrix (U.S.), Inc.</u>, 167 F.3d 1261, 1265 (9th Cir. 1999) (overruled on other grounds); <u>see</u> <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992).  Here, the challenge to subject matter jurisdiction is effectively a "facial attack," and as such, the allegations of plaintiffs' complaint are taken as true.  <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).

**III. ANALYSIS**

SPG challenges this court's exercise of personal jurisdiction. Plaintiffs argue that this case was improperly removed, but at this point, the court evaluates this argument only insofar as it challenges the existence of subject matter jurisdiction.  These two

10

challenges seek different remedies: dismissal of the case, or remand pursuant to 28 U.S.C. § 1447. Because both challenges fail, the outcome of this motion is not affected by the order in which the challenges are evaluated.

**A.   Personal Jurisdiction over Defendant SPG**

Plaintiffs argue that this court has two bases for personal jurisdiction over defendant SPG: SPG's constructive consent to personal jurisdiction, and SPG's contacts with the forum.

### 1.   Consent As A Basis for Personal Jurisdiction

A court's exercise of personal jurisdiction is consistent with the due process clause when the defendant has consented to that jurisdiction, regardless of the defendant's other contacts with the forum.   Plaintiffs argue that Shire consented to jurisdiction in this forum by appearing in state court in order to remove the case. Pl.'s Mem. P. & A. Supp. Opp'n Mot. at 5.

Regardless of service of process, an individual may submit to the jurisdiction of the court by appearance, and "a variety of legal arrangements have been taken to represent express or implied consent to the personal jurisdiction of the court." <u>Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee</u>, 456 U.S. 694, 703 (1982). However, not all appearances have the effect of estopping a defendant from asserting objections to personal jurisdiction.

The Ninth Circuit has held that removal to federal court does not serve as a consent to the exercise of personal jurisdiction. Schwarzenegger v. Fred Martin, 374 F.3d 797 (9th Cir. 2004).   In Schwarzenegger, defendants removed to federal court.   Then one

defendant, Fred Martin, brought a Fed. R. Civ. P. (12)(b)(2) motion to dismiss for lack of personal jurisdiction. Martin's motion was granted notwithstanding the removal.[7] Thus, SPG's act of removing the case to federal court did not constitute consent to the exercise of personal jurisdiction.

### 2. Contacts with The Forum As A Basis for Personal Jurisdiction

The exercise of jurisdiction comports with due process when the defendant has had sufficient contacts with the forum. Here, plaintiffs have alleged contacts including advertising products in the forum, selling products in the forum, ownership of stock in the forum, and a website accessible from the forum. Plaintiff asserts that these contacts give rise to specific personal jurisdiction.[8] In the alternative, plaintiff seeks leave to conduct jurisdictional discovery regarding SPG's forum-related contacts.

The court employs a three-part test to determine whether the exercise of specific jurisdiction comports with constitutional principles of due process. Gray & Co. v. Firstenberg Machinery Co., 913 F.2d 758 (9th Cir. 1990); Haisten, 784 F.2d at 1397; Data Disc, 557 F.2d at 1287. First, the defendant must "purposefully

_____

[7]Because all defendants must consent to removal to federal court, defendant Fred Martin had participated in the removal. See 28 U.S.C. § 1441; see also Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).

[8] Because the only cognizable contacts alleged by plaintiffs are related to plaintiffs' claims, the court need not also consider plaintiffs' contention that SPG is subject to general personal jurisdiction.

avail" herself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Second, the claim must arise out of the defendant's forum-related activities, and third, the exercise of jurisdiction must be reasonable. Haisten, 784 F.2d at 1397.

### i. Purposeful Availment or Direction

Plaintiff identifies a range of purported contacts: ownership of stock by California residents, a website accessible in California, advertisement in California, and sales to California residents. The first two of these contacts are clearly not cognizable as purposeful direction or availment, but the latter two, if established, are sufficient minimum contacts.

As to stock ownership, the Ninth Circuit interpreted Fed. R. Civ. P. 4(k)(2) not to provide personal jurisdiction merely because a corporation lists its stock on a United States exchange. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). A party's listing its stock on stock exchanges or promotion of sales of its stock in the United States is not sufficient to meet the minimum contacts test. Id. Therefore, the purposeful availment prong is not met by the allegation that SPG is NASDAQ traded stock or through possible California shareholders.

As to the website, Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414 (9th Cir. 1997) addresses what types of web pages constitute purposeful availment or direction. Cybersell held that whether personal jurisdiction may be exercised depends on "the nature and quality of commercial activity that an entity conducts

13

over the Internet." Id. at 419 (quoting Zippo Mfg. Co. v. Zippo DOT Com, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)). The Ninth Circuit described a spectrum of websites, with one end occupied by "interactive" sites that enable their publishers to conduct business and transactions with viewers in the forum, and with the other end occupied by passive sites that merely provide information. Id. at 417-18. Applying this rule, the Ninth Circuit held that a passive website that was not itself used to conduct business and that did not particularly target the forum state did not constitute purposeful availment or direction. Id. at 420. The court explained that "Creating a site, like placing a product into the stream of commerce, may be felt nationwide-or even worldwide-but, without more, it is not an act purposefully directed toward the forum state." Id. at 418.

Here, plaintiffs have not alleged any interactivity, that the website itself is used to conduct business, or that anything about the website is particularly directed toward California. Therefore the allegations surrounding the passive website promoting to Californians fails to establish purposeful availment.

As to the remaining alleged contacts, advertising and sales, the parties disagree as to whether these activities were performed by SPG or by a distinct business entity. On a Rule 12(b)(2) motion, if the court does not hold an evidentiary hearing, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.

14

1    <u>Boschetto</u>, 539 F.3d 1011, 1015 (9th Cir. 2008). Here, no

2    evidentiary hearing has been held.

3         Plaintiff alleges, based on a SPG press release, that SPG sold

4    Agrylin in many states in the United States including California.[9]

5    Advertising and sales directed at or within the forum state have

6    often been sufficient to demonstrate purposeful availment for the

7    purposes of asserting specific personal jurisdiction. <u>See, e.g.,</u>

8    <u>Sinatra v. National Enquirer, Inc.</u>, 854 F.2d 1191, 1202 (9th Cir.

9    1988) (advertising). Thus, the alleged marketing and sales

10   constitute minimum contacts.

11        Although the allegations of direct contacts are sufficient at

12   this stage, the court also discusses plaintiffs' alternative theory

13   of imputed contacts, in the event that this theory becomes relevant

14   at a future evidentiary hearing. Plaintiffs allege that even if

15   the sales and advertising were performed by a subsidiary, these

16   acts can be imputed to SPG. The mere "existence of a relationship

17   between a parent company and its subsidiaries is not sufficient to

18   establish personal jurisdiction over the parent on the basis of the

19   subsidiaries' minimum contacts with the forum." <u>Unocal</u>, 248 F.3d

20   at 925 (discussing general jurisdiction premised on imputed

21   contacts). However, the Ninth Circuit has recognized two

22   situations in which such attribution may be appropriate: where the

---

23

24        [9]    Defendant maintains that SPG did not manufacture,
     distribute or promote any products so these allegations are
25   contested and material to the outcome of this case. The court must
     credit plaintiffs' allegations at this time. At a future hearing,
26   defendant will be provided with an opportunity to contest these
     allegations.

parent is so involved with the subsidiary that the subsidiary is effectively the "alter ego" of the parent, and where the subsidiary acts as the agent of the parent.  Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122, 1134 (9th Cir. 2003).

To make a prima facie case of an alter ego relationship, plaintiff must demonstrate "(1) that there is such unity of interest and ownership that the separate personalities (of the two entities) no longer exist and (2) that failure to disregard (their separate identities) would result in fraud or injustice." Unocal, 248 F.3d at 926.  The first part of the test can otherwise be stated as a showing that the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." Calvert v. Huckins, 875 F. Supp. 674, 678 (E.D. Cal. 1995).  One example is where a parent corporation attempts to protect itself from liability by using its subsidiary "as a marketing conduit."  In that instance, the alter-ego test would be satisfied and piercing the corporate veil would be found appropriate.  Plaintiffs make no allegations satisfying the second prong of this test, and only address the first in passing.

Plaintiffs' allegations also do little to address a possible agency relationship between SPG and any subsidiary.  To show such a relationship, "the plaintiff must make a prima facie showing that the subsidiary represents the parent corporation by performing services sufficiently important to the parent corporation that if it did not have a representative to perform them, the parent corporation would undertake to perform substantially similar

16

services." Harris Rutsky, 328 F.3d at 1135 (internal quotations and modifications omitted).

Because plaintiffs' allegations of direct contacts suffice at this point, the court need not dwell on plaintiffs' alternative allegations satisfy this test.

Accordingly, SPG's alleged conduct in marketing and selling Agrylin in California constitutes purposeful direction toward and availment of the forum.

### ii. Connection between Contacts and the Claim

As explained above, the Ninth Circuit applies a "but for" test for the relationship between the contacts and plaintiffs' claims. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Here, plaintiffs have alleged that but for SPG's sales and marketing of Agrylin, Mr. Avers would not have taken the drug, and the events giving rise to the claims would not have occurred. Accordingly, this factor of the specific personal jurisdiction test is satisfied.

### iii. Reasonableness

Because plaintiff has carried its burden of satisfying the first two steps, the defendant must show that the exercise of jurisdiction would be unreasonable. Fred Martin Motor Co., 374 F.3d at 802. The Ninth Circuit considers six factors in evaluating reasonableness of specific jurisdiction: 1) the burden of defending the suit in the forum; 2) the extent of conflict with the sovereignty of the defendant's state; 3) the forum state's interest in the dispute; 4) the most efficient forum for judicial resolution

of the dispute; 5) the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and 6) the existence of an alternative forum. <u>Gray & Co.</u>, 913 F.2d at 761.[10] The court considers each of these in turn.

The first factor is the weight of defendant's burden of defending the suit in the forum. The burden on the "one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." <u>Asahi Metal Ind.</u>, 480 U.S. at 114; <u>but see</u> <u>Sinatra</u>, 854 F.2d at 1199 ("Modern advances in communications and transportation have significantly reduced the burden of litigating" in another nation). Notwithstanding defendant's alleged US sales force employees, litigating in this forum may impose a significant burden. This burden is somewhat lower than the burden faced by some foreign defendants, in that SPG need not also overcome a language barrier. <u>See</u> <u>Dole Food Co., Inc. v. Watts</u>, 303 F.3d 1104, 1115 (9th Cir. 2002). Nonetheless, this factor weighs in favor of the defendant.[11]

Second is the extent to which exercise of jurisdiction would

---

[10] As described above, this test is traditionally formulated with an additional factor: the extent of defendant's purposeful interjection into the forum. However, the Ninth Circuit has held that this factor is satisfied whenever minimum contacts have been found, such that there is no need to discuss it separately. <u>Sinatra</u>, 854 F.2d at 1199.

[11] Of course, the burden would not seem significant if the defendant actually engages in business in California.

conflict with the sovereignty of the defendant's state. "Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." Sinatra, 854 F.2d at 1199. As with each of the reasonableness factors, this is not controlling. The Ninth Circuit has specifically cautioned against weighing this factor so heavily as to effectively preclude suit against foreign defendants. See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1333 (9th Cir. 1984). Here, other than the fact that SPG is a United Kingdom Entity, SP has not identified any particular interest of the UK at issue here. Thus, this factor only minimally implicates sovereignty of another nation, and similarly slightly favors SPG.

The third factor is the extent of California's interest in adjudicating the suit. "California maintains a strong interest in providing an effective means of redress for its residents [who are] tortiously injured." Sinatra, 854 F.2d at 1200. It is key for California to allow litigation in its forum where defendants allegedly expose California residents to injury in the forum. This factor heavily weighs in favor of plaintiff.

Fourth is the most efficient forum for judicial resolution of the dispute. The focus of this inquiry is on the location of the witnesses and evidence. Caruth v. International Psychoanalytical Ass'n, 59 F.3d 126, 129 (9th Cir. 1995). The ingestion of Agrylin and the harm therefrom allegedly occurred in California meaning that there may be damages witnesses in California. The parties

have not indicated where the drug was manufactured, or the location of other probable witnesses. Mindful of the fact that the burden of showing the unreasonableness of personal jurisdiction generally falls on the defendant, the court concludes that the available evidence and allegations cause that this factor to favor plaintiffs.

The fifth consideration is the importance of the chosen forum to the plaintiff's interest in convenient and effective relief. If the plaintiffs are unable to litigate their claim in California, they would need to do so in the United Kingdom which is an obvious inconvenience. This factor weighs in favor of the plaintiff. Clearly, "trying a case where one lives is almost always a plaintiff's preference." <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 624 (9th Cir. 1991). In the instant case, the limited mobility of plaintiff Mr. Avers, who still suffers from permanent physical disabilities from his injury, warrants attaching some additional weight to this factor.

The final consideration is the existence of an adequate alternative forum. British courts provide an obvious alternative forum. Unlike the other reasonableness factors, for this factor, the Ninth Circuit has placed the burden on plaintiffs. <u>Core-Vent Corp. v. Nobel Industries AB</u>, 11 F.3d 1482, 1490 (9th Cir. 1993). Aside from inconvenience, plaintiffs have provided no argument as to why a UK forum would be inadequate. This factor is decided in favor of the defendant.

In balancing these considerations, some key factors weigh in

favor of the defendant while several weighty factors yield results in favor of the plaintiffs. As mentioned above, California's strong interest in providing a forum for adjudication of the claims of its residents militates in favor of a finding of reasonableness as does considerations of a convenient and effective forum for the plaintiffs given the immobility from the alleged harms suffered. Given that plaintiffs allegations regarding defendant's contacts with the forum state, credited at this time, and the other factors in plaintiff's favor, it is not unreasonable for a California court to exercise personal jurisdiction over the defendant.

**3. Future Evidentiary Hearing and Jurisdictional Discovery**

Plaintiffs further request jurisdictional discovery. Jurisdictional discovery can serve at least two purposes. First, it allows plaintiffs to acquire evidence supporting the allegations which, in turn, justify the exercise of personal jurisdiction. Although the court concludes that plaintiffs' allegations support the exercise of personal jurisdiction, SPG is entitled to challenge these allegations, and plaintiffs may seek discovery of evidence to be considered in evaluating such a challenge. See, e.g., Terracom v. Valley Nat'l Bank, 49 F.3d 555, 562 (9th Cir. 1995). Second, the Ninth Circuit has also allowed jurisdictional discovery even when a plaintiff has not yet made sufficient allegations. Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd., 328 F.3d 1122 (2003); see also Trintec Indus. v. Pedre Promotional Prods., 395 F.3d 1275, 1283 (Fed. Cir. 2005).

////

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Boschetto v. Hansing, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting Data Disc, 557 F.2d at 1285 n.1). The decision to grant jurisdictional discovery is within the discretion of the district court.

Here, jurisdictional discovery is plainly proper as to whether SPG itself engaged in sales and marketing in California. Plaintiffs have alleged particular contacts, and request jurisdictional discovery to enable them to provide evidence of these contacts.

Plaintiffs' request for jurisdictional discovery relating to SPG's relations with other business entities is less straightforward. As explained above, plaintiffs have not provided allegations that would support a theory of imputed contacts. However, the Ninth Circuit has recognized that for claims of this type, even formation of allegations may be impossible without jurisdictional discovery. Harris Rutsky, 328 F.3d at 1135. Harris Rutsky reversed a district court's denial of jurisdictional discovery even though the plaintiff's allegations did not themselves meet the agency or alter-ego tests for imputed contacts. Id. Moreover, many of the concerns weighing against granting jurisdictional discovery do not apply when other discovery is already permitted against the same defendant. Accordingly, if discovery reveals that the marketing and sales were performed by

an entity separate from SPG, plaintiffs may also conduct limited discovery as to whether that entity's contacts may be imputed to SPG.

**B.    Subject Matter Jurisdiction**

28 U.S.C. section 1441 provides that actions brought in state court may be removed to federal court provided that there is a basis for federal subject matter jurisdiction.  Plaintiffs argue that removal in this case was improper, such that the case should be remanded back to state court.  Although plaintiffs have not brought a separate motion for remand, federal courts have an inherent power and obligation to address the closely related question of subject matter jurisdiction <u>sua sponte</u>.

As noted, questions of removal are closely related to, but not entirely contiguous with, questions of federal subject matter jurisdiction.  To explain the connection between the two, the court must first address the process for removal.  The procedures for removal in civil cases are provided by 28 U.S.C. section 1446(b):

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or

> other paper from which it may first be
> ascertained that the case is one which is or
> has become removable, except that a case may
> not be removed on the basis of jurisdiction
> conferred by section 1332 of this title [28
> USCS § 1332] more than 1 year after
> commencement of the action.

28 U.S.C. 1446(b). As courts have interpreted section 1446(b), the statute provides two separate avenues for removal. If a case is originally removable, then under the first paragraph, a defendant may remove the case within thirty days of receipt of service and a copy of the complaint. Although the statute provides that the thirty day period begins upon receipt of the complaint "through service or otherwise," the Supreme Court has held that either formal service of the complaint and summons or formal service of the summons along with receipt of the complaint is required. Murphy Bros. v. Michetti Pipe Stringing, 526 U.S. 344, 347-48 (1999). For a case that is originally removable, the one-year time limit provided in the section's second paragraph does not apply. Ritchey v. Upjohn, 139 F. 3d 1313, 1316 (9th Cir. 1998). Accordingly, Ritchey held that when a complaint was initially removable, a defendant who had not been served within a year of filing could nonetheless remove after the one-year period, provided that removal was not later than thirty days from receipt of service. Id. The second avenue to removal, under the second paragraph of section 1446(b), applies when a case that was not initially removable becomes so. Removal under this provision is only available within the first year of the suit. In this case, the non-diverse defendant, Dr. Newsom, was dismissed more than a

year after the suit was filed. Accordingly, the parties' discussion focuses on the first route to removal.

Neither of the time limits in section 1446(b) are themselves jurisdictional. Gray v. Moore Business Forms, Inc., 711 F. Supp. 543, 545 (N.D. Cal. 1989), see also, e.g., Barnes v. Westinghouse Electric Corp., 962 F.2d 513, 516 (5th Cir. 1992). Numerous courts have held that a district court lacks the power to remand on the basis of a procedural, rather than jurisdictional, defect in removal absent a timely motion under section 1447(c). Ariel Land Owners, Inc. v. Dring, 351 F.3d 611, 616 (3d Cir. 2003), Ellenburg v. Spartan Motors Chassis, Inc., 519 F.3d 192, 198 (4th Cir. 2008), Barnes v. Westinghouse Electric Corp., 962 F.2d 513, 516 (5th Cir. 1992), In re Continental Casualty Co., 29 F.3d 292, 294 (7th Cir. 1994). Accordingly, the sole question is whether this case, as it currently stands, satisfies the requirements of a grant of jurisdiction. The case appears to satisfy 28 U.S.C. § 1332: plaintiffs' claim exceeds the jurisdictional amount, and because Newsom has been dismissed, there is now complete diversity between the parties. Thus, this court has subject matter jurisdiction.

If plaintiffs wish to enforce the non-jurisdictional limits imposed by section 1446(b), they must bring a motion for remand. The court calls plaintiffs' attention to 28 U.S.C. section 1447(c), which provides that "a motion to remand the case on the basis of any defect other than a lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." In this case, such a motion should explain

why this court presently lacks subject matter jurisdiction, or alternatively why the time for seeking a remand did not expire on December 16, 2008, thirty days after this case was removed.

### IV. CONCLUSION

For the reasons stated above, the court ORDERS as follows

1.   Defendant's motion to dismiss for lack of personal jurisdiction is DENIED WITHOUT PREJUDICE.

2.   Plaintiffs are GRANTED 90 days in which to conduct limited jurisdictional discovery.

3.   At the close of jurisdictional discovery, defendant MAY refile the instant motion. If the motion is filed, and if facts remain in dispute, the court will set the matter for an evidentiary hearing.

IT IS SO ORDERED.

DATED: April 22, 2009.


LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT